No. 13-1360

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

**RICHARD G. TATUM, individually and on behalf of a class of all other persons similarly situated,**

*Plaintiff-Appellant*

v.

**RJR PENSION INVESTMENT COMMITTEE; RJR EMPLOYEE BENEFITS COMMITTEE; R. J. REYNOLDS TOBACCO HOLDINGS, INC.; R. J. REYNOLDS TOBACCO COMPANY,**

*Defendants-Appellees*

_____

## MOTION TO STAY THE MANDATE
## PENDING THE FILING OF A PETITION FOR A WRIT OF CERTIORARI
_____

Pursuant to 28 U.S.C. § 2101(f), Rules 27 and 41(d)(2) of the Federal Rules of Appellate Procedure, and Fourth Circuit Local Rule 41, Defendants-Appellees RJR Pension Investment Committee, RJR Employee Benefits Committee, R.J. Reynolds Tobacco Holdings, Inc., and R.J. Reynolds Tobacco Company (collectively, "RJR") respectfully request that this Court stay its mandate pending RJR's filing of a petition for a writ of certiorari with the Supreme Court of the United States.

On August 4, 2014, this Court issued its opinion reversing the district court's

entry of judgment in favor of RJR. *See Tatum v. RJR Pension Inv. Committee*, No. 13-1360, 2014 WL 3805677, --- F.3d. ---, Docket Entry No. 94 (4th Cir. Aug. 4, 2014) ("Op"). Specifically, over a dissent by Judge Wilkinson, this Court held in relevant part that (1) the burden of proof on causation for a claim under 29 U.S.C. § 1109(a) rests with the defendant, and (2) causation is satisfied unless the defendant's decision was the single decision a hypothetically prudent fiduciary "would have" made. The Court's decision raises two important issues of ERISA law that have divided federal courts of appeal and where further review by the Supreme Court is appropriate.

Without a stay, the Court's mandate will issue September 9, 2014. For the reasons stated below, RJR respectfully submits that this motion satisfies Federal Rule of Appellate Procedure 41(d)(2) and this Court's Rule 41 because RJR's intended petition for a writ of certiorari would present a substantial question and good cause exists to stay this Court's mandate.

On Thursday, September 4, 2014, RJR's counsel asked counsel for Plaintiff-Appellant Richard G. Tatum whether they would oppose this motion. RJR's counsel has not yet received a substantive response to this inquiry and thus does not know Plaintiff's position on the motion.

## STATEMENT OF THE CASE

In 1999, RJR Nabisco—a conglomerate that included food (Nabisco) and tobacco (RJR) subsidiaries—decided to spin off the RJR tobacco company, in part to limit Nabisco's exposure to billions of dollars of tobacco liability. (RJR Br. 4.) At the time, participants in RJR Nabisco's 401(k) plan could select from multiple funds, including two employer single-stock funds—one invested in the stock of RJR Nabisco and one in the food subsidiary, which was partially owned by public stockholders. (*Id.* at 6.) After the spinoff, the plan still included two funds for the Nabisco stocks (the parent and the food subsidiary), even though Nabisco was then an unrelated company. (*Id.* at 5-6.)

In March 1999, prior to the spinoff, the RJR Nabisco Plan's fiduciaries decided that the new RJR 401(k) plan (the "Plan") should not offer the two non-employer, single-stock Nabisco Funds as ongoing investment options, mainly due to their high risk and the concern that they would not fall within the exception to ERISA's diversification mandate for single-stock employer funds, *see* 29 U.S.C. § 1104(a)(2). (RJR Br. 6.) The fiduciaries decided to freeze the Nabisco Funds at the time of the spinoff so no new investments could be made, and then divest them approximately six months after the spinoff. (*Id.* at 6-7.)

After the June 1999 spinoff, the concerns about the excessive risk of Nabisco's stocks proved accurate. In the third and fourth quarters of 1999, the

Nabisco stocks depreciated significantly due to the massive potential tobacco liability Nabisco faced because of its previous affiliation with RJR.  (*Id.* at 7-8.)  Given the unacceptably high risk of the undiversified Nabisco Funds, and the lack of any expectation that those stocks would increase in value, the RJR employees reaffirmed the earlier decision to eliminate the funds.  (*Id.*)  The Nabisco Funds were removed from the Plan on January 31, 2000, by which time their value had fallen 60% and 28%, respectively, since the spin-off.  (*Id.* at 8.)

In March 2000, Nabisco received an unexpected takeover bid from business magnate Carl Icahn.  The bidding war that resulted from this attempted takeover caused the prices of the Nabisco stocks to appreciate dramatically.  (*Id.*)

Several years later, Tatum brought this putative class action, seeking lost profits under 29 U.S.C. § 1109(a) on the ground that the elimination of the Nabisco Funds breached the Plan fiduciaries' ERISA duty of prudence under 29 U.S.C. § 1104.  After a five-week bench trial, the district court entered judgment for RJR.  926 F. Supp. 2d 648 (M.D.N.C. 2013).  The court found that RJR breached its procedural duties by failing to investigate fully the elimination of the Nabisco Funds.  But the court then made two holdings relevant to this motion.  First, the court held that as the defendant, RJR had the burden to prove that the procedural breach did not cause any loss to the Plan.  The court then conducted a lengthy and detailed factual analysis and found that RJR's decision to divest the Nabisco Funds

4

was "objectively prudent." *Id.* at 684-89. Based on this factual finding, the district court held that a hypothetical prudent fiduciary "could have" made the same decision, and thus RJR's prudent decision did not cause loss to the Plan. *Id.* at 689-90.

In a divided decision, a panel of this Court vacated the district court's judgment in favor of RJR. After upholding the district court's holding that RJR breached its duty of procedural prudence, the panel majority also upheld the district court's decision to place the burden of proof on RJR, the defendants, to disprove loss-causation under § 1109(a). (Op. 29-34.) However, the panel majority then held that the district court "failed to apply the correct legal standard in assessing RJR's liability." (*Id.* at 3.) The panel majority concluded that in a claim for damages under § 1109(a), a procedural breach based on a failure to investigate causes loss unless the defendant can prove that a hypothetical prudent fiduciary "would have" made the "same decision." (*Id.* at 35.)

Judge Wilkinson dissented in a lengthy opinion. Judge Wilkinson explained that he "do[es] not believe ERISA allows plan fiduciaries to be held monetarily liable for prudent investment decisions" (Op. 57), and opined that the panel majority had departed from this Court's prior precedent and the decisions of other circuits (*id.* at 59-63). He also disagreed with the panel majority's decision to shift the burden of proof on causation to the defendants. (*Id.* at 63-66.)

5

On August 18, 2014, RJR filed a petition for rehearing *en banc* pursuant to Rule 35 of the Federal Rules of Appellate Procedure.  The Court denied that petition on September 2, 2014.

## **REASONS FOR GRANTING THE MOTION FOR A STAY**

### I. LEGAL STANDARD.

This Court has authority to stay its mandate when a party intends to seek a writ of certiorari from the United States Supreme Court.  28 U.S.C. § 2101(f).  Under Federal Rule of Appellate Procedure 41(d)(2)(A), "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court."  To obtain a stay, the movant "must show that the certiorari petition would present a substantial question and that there is good cause for a stay."  Fed. R. App. P. 41(d)(2)(A); *see also* 4th Cir. Local R. 41 (same).  If this Court grants the motion for a stay, and a certiorari petition is filed, the stay "continues until the Supreme Court's final disposition" of the case.  Fed. R. App. P. 41(d)(2)(B).  This Court has stayed its mandate on numerous occasions pending the filing of a petition for a writ of certiorari where a divided panel of this Court decided a potentially cert-worthy question. *See, e.g.*, *Waldburger v. CTS Corp.*, No. 12-1290, Docket Entry No. 47 (4th Cir. Aug. 5, 2013) (granting stay of mandate), *cert granted*, 134 S. Ct. 896 (2014); *Greenville Woman's Clinic v. Comm'r, S.C. Dep't of Health & Envtl. Control*, No. 01-2090, 2002 WL 31875116

6

(4th Cir. Dec. 2, 2002) (same); *Kolon Industries, Inc. v. E.I Du Pont de Nemours & Co.*, No. 12-1587, Docket Entry No. 68 (4th Cir. May 23, 2014) (same).

## II. RJR'S PETITION FOR CERTIORARI WILL PRESENT TWO SUBSTANTIAL QUESTIONS FOR THE SUPREME COURT'S REVIEW.

RJR respectfully submits that its petition for a writ of certiorari will present two substantial questions worthy of the Supreme Court's resolution. First, the petition will present the substantial question of whether the defendant bears the burden of proof for the element of causation on a claim under 29 U.S.C. § 1109(a). Second, it will present the substantial question of what standard to apply to evaluate whether a fiduciary is liable for damages under § 1109(a).

As a preliminary matter, both of these questions sharply divided the panel of this Court, and were only resolved in a lengthy precedential opinion and a similarly lengthy dissent. But more importantly, the courts of appeals are also deeply divided on these issues.

*First*, with respect to the question of who bears the burden of proof for the element of causation under § 1109(a), the courts of appeals are deeply divided. (Op. 64-65.) While this Court has now aligned itself with the minority position (shared by two other circuits), seven other circuits have disagreed and have placed the burden of proof on the plaintiff to prove causation under § 1109(a). *Compare McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995)

7

(burden shifts to defendant); *Martin v. Feilen*, 965 F.2d 660, 671-72 (8th Cir. 1992) (same), *with Peabody v. Davis*, 636 F.3d 368, 378 (7th Cir. 2011) (burden rests on plaintiff to prove causation); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004) (same); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) (same); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999) (same); *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 105-06 (2d Cir. 1998) (same); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995) (same); *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992) (same). Thus, there exists a deep and entrenched 7-3 circuit split on this question.

The existence of a conflict among federal courts of appeals with respect to a legal issue is one of the principal factors that the Supreme Court considers when deciding whether to grant certiorari. *See* Sup. Ct. R. 10(a) (in deciding whether to grant certiorari, the Supreme Court considers whether "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter"); Eugene Gressman, *et al.*, *Supreme Court Practice* § 4.4, at 242-43 (9th ed. 2007) (the Supreme Court will often grant certiorari where federal circuit courts are in conflict); *Weisgram v. Marley Co.*, 528 U.S. 440, 446 (2000) (certiorari granted because "[c]ourts of appeals have divided on the question"); *Thompson v. Keohane*, 56 U.S. 99, 106 (1995) (certiorari

8

granted "[b]ecause uniformity among federal courts is important on questions of this order"). Indeed, where lower courts have divided on a question presented, Justices of the Supreme Court have concluded that there was a reasonable probability that certiorari would be granted, and stayed the lower court's mandate. *See, e.g.*, *Maryland v. King*, 133 S. Ct. 1, 2-3 (2012) (Roberts, C.J., in chambers); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309-10 (1989) (Marshall, J., in chambers).

There are also reasons to believe that the Supreme Court may view the minority position adopted by this Court as the incorrect position. As Judge Wilkinson noted in his dissent, the statute does not provide for burden shifting to the defendants. (Op. 63-64.) And when a statute is silent, "[l]eaving the burden of proof with the plaintiff is consistent with the Supreme Court's recognition of the 'ordinary default rule that plaintiffs bear the risk of failing to prove their claims,' including each required element." (Op. 64, quoting *Schaffer ex re. Schaffer v. Weast*, 546 U.S. 49, 56 (2005).)

Furthermore, as Judge Wilkinson noted, the cases cited by the majority to justify shifting the burden of proof on loss causation "deal with self-dealing, a far more serious breach of fiduciary duty than simple lack of prudence." (Op. 65.) And while the majority relied on trust law to justify shifting the burden, at the time ERISA was enacted, trust law imposed the burden of proving causation on the

9

plaintiff at all times. *See* George Gleason Bogert, *et al.*, *Trusts and Trustees* § 701, at 199 (2d rev. ed. 1982) ("The beneficiary must bear the burden of proving that the act or omission of the trustee has caused a diminution of the trust income or principal."). This is therefore a substantial question of law worthy of Supreme Court review.

*Second*, with respect to the standard for evaluating loss causation in a case seeking damages under § 1109(a), this Court has now created a circuit split. All circuits that had previously addressed this issue agreed that causation depends on whether an investment was objectively imprudent. *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (loss causation requires showing "'that the investment at issue was improvident'"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) (no causation if "a questioned decision led to objectively prudent investments"); *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 306 (5th Cir. 2000) (fiduciary is liable for losses if "a prudent person would *not*" have made the same choice) (emphasis added); *Kuper v. Iovenko*, 66 F.3d 1447, 1459-60 (6th Cir. 1995) ("[A] plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."), *abrogated on other grounds by Fifth Third Bankcorp v. Dudenhoeffer,* 134 S. Ct. 2459 (2014); *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 962 (D.C. Cir. 1985) (Scalia, J., concurring in part and

10

dissenting in part) (same). This Court is now the sole court of appeals that applies a standard under which a fiduciary who made an objectively prudent decision may still be liable for damages.

In addition, just as with the issue of who bears the burden of proof on causation, there are several reasons to believe that the Supreme Court will disagree with the position taken by the panel. As Judge Wilkinson noted in dissent, the panel majority's loss-causation standard is inconsistent with the Supreme Court's recent elucidation of this standard in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). Furthermore, there is a substantial chance that some Supreme Court Justices will agree with Judge Wilkinson that the panel majority's causation standard is bad ERISA policy (Op. 84), and will want to ensure that an ERISA fiduciary is only obligated to make a prudent decision, rather than the "best possible decision" (*id.* at 72). Therefore, RJR's petition will present two substantial questions worthy of Supreme Court review.

### III.   GOOD CAUSE EXISTS TO GRANT A STAY OF THE MANDATE.

RJR respectfully submits that good cause exists in this case to stay the mandate pending the filing of its petition for a writ of certiorari with the United States Supreme Court. Absent a stay, the district court, upon the issuance of this Court's mandate, would proceed to decide whether RJR satisfied its current duty to show that it did not cause any loss to the Plan under the standard established by the

panel majority. Moreover, numerous other issues remain to be decided on remand, including (among other things) two motions to decertify the class, additional causation issues, RJR's affirmative defenses, and ultimately damages. If RJR is correct and the Supreme Court rules in RJR's favor on either of these substantial questions, any effort spent by the district court to decide these remaining issues will have been in vain and a waste of valuable judicial resources.

By contrast, the grant of a stay would not prejudice Tatum. This claim has been pending since 2002. An additional modest delay while RJR prepares and files its petition for certiorari and while the Supreme Court considers that petition would not cause harm to Tatum.

## **CONCLUSION**

For the reasons set forth above, RJR respectfully requests that this Court stay issuance of the mandate pending the filing of a petition for writ of certiorari with the United States Supreme Court.

Respectfully submitted,

 /s/ Adam H. Carnes
Daniel R. Taylor, Jr.
Adam H. Charnes
Chad D. Hansen
Thurston H. Webb
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2014, I electronically filed the foregoing **MOTION TO STAY THE MANDATE PENDING THE FILING OF A PETITION FOR A WRIT OF CERTIORARI** with the Clerk of Court using the CM/ECF System. Counsel for all parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

/s/ Adam H. Charnes
Adam H. Charnes
KILPATRICK TOWNSEND &
  STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300

*Counsel for Appellees*